## CONSTRUCTION OF THE PERIOD OF GRACE FOR PAYMENT OF LIFE INSURANCE PREMIUMS.

Superior Court of Cincinnati.

WILLIAM GATES V. WESTERN & SOUTHERN LIFE INSURANCE CO.*

Decided, May 24, 1924.

*Life Insurance—Period of Grace for Payment of Premiums—Construction of the Word "Premium"—Section 9420-2, General Code.*

1. The provision of a policy of life insurance limiting the commencement of the period of grace until after the payment of all premiums for the first year is in conflict with Section 9420-2, General Code, which provides for a grace of one month for the payment of all premiums after the first and is therefore invalid.

2. The word "premium," as used in Section 9420-2, General Code, does not necessarily mean annual premium, but is the consideration paid for a stated period, whether such premium is paid quarterly—semi-annually—annually, or for such other period as the parties may determine in accordance with the intention expressed in the policy or contract of insurance.

3. Where the intention of a policy of insurance is to provide for quarterly premiums and the premium for the first quarter is paid, such payment constitutes a payment of the first premium within the meaning of Section 9420-2, General Code, and the insured is entitled to a grace of one month within which to pay the premiums for all subsequent quarters.

4. Where the insured after paying the premiums for the first and second quarters under the limited payment life policy, failed to pay the premium for the third quarter of the first year on the date due and died within one month from said date, her beneficiary upon tendering the premium for such third quarter during the period of grace is entitled to recover the proceeds of the policy, less the overdue quarterly premium.

*Alvin H. Rowe* and *John Thorndyke,* for plaintiff.
*Clyde Johnson* and *Walter D. Murphy,* for defendant.

MARX, J.

By agreement of the parties, this case was tried and submitted to the court without a jury. The facts show that the defendants issued a policy of insurance upon the life of Cleo

* Error not prosecuted.

M. Gates in the amount of one thousand dollars. The plaintiff who was the husband of the insured, is named in the policy as her beneficiary. The policy provides for the quarterly payment of premiums on the second day of February, May, August and November of each year for a period of twenty years. The premiums for the first two quarters were paid, but the premium for the third quarter, due August 2, 1921, was not paid. The insured, Cleo M. Gates, died seven days later, on August 9, 1921. Thereafter, the plaintiff tendered payment of the overdue premium which the defendant refused to accept. At the request of the defendant, plaintiff furnishd proper proofs of death which he went to some trouble to obtain. Subsequently, the defendant refused the payment of its policy on the ground that the same had lapsed by reason of the non-payment of the premium for the third quarter. Plaintiff, thereupon commenced this action to recover the principal of said policy on the ground that the insured was entitled to a period of thirty days grace within which to pay the premium for the third quarter of the first year, in accordance with the provisions of Section 3920 of the General Code of Ohio, and that since Cleo M. Gates died within this period of grace, the policy was kept in force by the provisions of law and must be paid.

The defendants claim that the policy only provides for a period of grace after the payment of all premiums for the first *year,* and that the policy lapsed upon the failure of the insured to pay the premium for the third quarter of the first year upon the date when the same became due.

If the insured was entitled to grace upon all quarterly payments after the payment of the premium for the first quarter of the first year, then the plaintiff is clearly entitled to recover. However, if the insured was only entitled to grace after the payment of all quarterly payments due during the first year, then, having failed to pay her premium for the third quarter, the plaintiff is not entitled to recover unless, the defendant waived its right to forfeit the policy on account of the non-payment of the premium for the third quarter.

The determination of this vital question depends upon the

definition and interpretation of the word "premium" as used in the Section 9420 of the General Code of Ohio which provides:

"No policy of life insurance in form other than as provided in sections 9412 to 9417, both inclusive, shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless the same shall follow the following provisions:

(1)   A provision that all premiums shall be payable in advance either at the home office of the company, or to an agent of the company, upon delivery of a receipt signed by one or more of the officers who shall be named in the policy.

(2)   A provision for a grace of one month for the payment of every premium after the first, which may be subject to an interest charge, during which month, the insurance shall continue in force, which provision may contain a stipulation that if the insured shall die during the month of grace the over-due premium will be deducted in any settlement under the policy."

Section 9412 of the General Code of Ohio provides the standard form in Ohio for a limited payment life insurance policy and this form contains the following provision:

"*A grace of one month* subject to an interest charge at the rate of ........ per centum per annum shall be granted for the payment of every premium after the first, during which month the insurance shall continue in force. If the insured shall die during the month of grace the overdue premium will be deducted from any amount payable hereon in any settlement hereunder."

All forms of life insurance provided by law, contain a similar provision.

Notwithstanding Section 9420 of the General Code and the prescribed form for life insurance policies, the defendant, in the policy issued to the insured in this case, saw fit to insert one word, to-wit: "*year*" after the word "*first*" in the clause of the policy covering the period of grace. This word is not contained in the standard form prescribed by the law of Ohio or permitted by Section 9420 of the General Code. The provision with respect to grace in the policy issued to the insured in this case reads:

"A grace of one month (not less than 30 days), subject
to an interest charge at the rate of 5 per cent. per annum,
shall be granted for the payment of every premium after the
first *year*, during which month the insurance shall continue in
force. If the insured shall die during the month of grace (not
less than 30 days) the overdue premium shall be deducted
from any amount payable hereon in any settlement hereunder."

The above quoted clause of the policy is clear and unambigu-
ous and under these terms, the insured was not entitled to
grace until after the payment of all premiums for the first
year, but the insurance company can not be permitted to
override the statute by inserting unauthorized language. Since
the language of the policy and the language of the statute are
not the same, the language of the statute must govern and the
rights of the plaintiff must be determined in accordance with
the provisions of the statute law of this state with respect to
grace.

However, the defendant contends that the provision of the
statute, "for a grace of one month for the payment of every
premium after the first" means after the *first year*.

It is self evident that the word "first" does not refer to
"year" but does refer to the word premium." This clear
intention is manifest by reading the language as making pro-
vision "for a grace of one month for the payment of every
*premium* after the first *premium*." Even so, the defendant
asks the court to construe the word premium as meaning
*annual premium*. The Legislature did not say that there
should be a period of grace after the payment of the first
*annual premium* but after the payment of the *first premium*.
When the Legislature intended to refer to *annual* premium,
it said so as for example in Section 9527 of the General Code,
in which permission is granted to Mutual Fire Insurance Com-
panies to collect "*a full annual premium*."

To give Section 9420-2 of the General Code the construction
urged by the defendant would force the court to read into the
statute the word "*annual*" before the word "premium." It
is obvious that this can not be done any more than the court

can permit the defendant to circumvent the statute by inserting the word *"year"* after the word *"first"* in its policy.

The defendant further suggests that the word "premium" without placing the word "year" after it or the word "annual" before it necessarily and of itself means an annual premium and that the so-called quarterly premiums privided for by the policy are only quarterly installments of one annual premium, and, therefore, grace only runs after the payment of the fourth installment of the first year's premium. It is sufficient answer to this argument to say that the word premium has never been defined or interpreted by any court or text-book to mean an *annual* payment. The simplest definition of the word premium is that a premium is "the consideration for a contract of insurance." (2 Bouvier L. Dict. (Rawles) p. 729). It has been variously defined as follows:

"The premium is the agreed price for assuming and carrying the risk.   *   *   *   Net premium is the exact amount required to carry the insurance from period to period. Gross premium is the amount actually charged by the insurer under the contract usually made up in excess of the net premium by adding a certain 'loading' for the profit and expenses of the insurer, such as agents' commissions, rent, taxes, etc." (*Joyce on the Law of Insurance,* Volume 2, Article 1083, 2nd Edition.)

"The sum paid for undertaking the risk in a contract of insurance." Anderson's Dict. of Law, 803.)

"The consideration for which he 'the insurer' so undertakes to indemnify the assured is called the premium." (1 Arnold on Marine Ins. (8th ed. Hart & Simey) Sec. 1, p. 3.)

"The word 'premium' comes either from the word 'praemium,' signifying 'price' or from the word 'primo,' because formerly the premium was paid before all, and at the time of signing the policy." (Emerigon on Ins., Meredith's ed. 1850, c. III, sec. 1, p. 51.)

Our Supreme Court has tersely defined the elements of a contract of insurance in *State of Ohio, etc.* v. *The P. C. C. & St. L. Ry. Co.,* 68 O. S., 9, at page 30, as follows:

"In the parlance of the business of insurance ordinarily the contract is called a policy; the consideration paid, the premium; and the events insured against are called "risks and perils."

Nowhere, is premium defined to be the *annual consideration* or the price paid *annually* or the sum paid for *annual* insurance. It is therefore, clear that premium does not necessarily mean *annual* premium but is the price or consideration paid *periodically,* whether annual, semi-annual or quarterly for a contract of insurance. Whether the particular premium under consideration was an annual premium payable in four quarterly installments or was a premium payable in advance for the ensuing three months, must be determined from the contract of insurance itself. The particular contract of insurance in this case was initiated by the application of Cleo M. Gates, which by the terms of Section 9420 of the General Code, paragraph 3, and by General Condition No. 1, of the policy became a part of the policy itself. In this application question 11-C reads:

"How is *premium* to be paid?"

The answer is:

"*Quarterly.*"

Question 11-D reads:

"Amount of each payment," and the answer is: "$7.89."

These questions and answers evidence the fact that the parties contemplated a contract of insurance under the terms of which *premiums* were not to be paid annually but quarterly in the amount of $7.89, which was a *higher* amount than would have been charged for the same period of time if the premium had been paid annually. In other words, the insured paid the defendant a *consideration* for making the premiums under the policy quarterly premiums in place of annual premiums. The policy itself, after referring to the payment of an annual premium provides;

"The company will accept payment of *premiums* at other times than as stated above, as follows: * * * *quarterly* $7.89, but in any event this policy shall continue in force only for the *period actually paid* except as herein provided."

This shows that the policy was not issued upon the payment of an annual premium in quarterly installments because *no*

*credit is extended* as to the unpaid installments, but the periods for which insurance is paid are from quarter to quarter, not from year to year. The first premium covers the first three months. The second premium covers the second three months, etc. Each *premium* must be paid *in advance*. That the company itself considered the first payment to be a payment of the first premium is shown by the fact that it could not lawfully issue the policy under Section 9420 of the General Code, paragraph No. 1, unless "all *premiums*" were paid *in advance*. See Elliott on Contracts, Section 4358-1, in which the author states:

> "It is generally provided that the policy shall not take effect until the *first premium* shall have been actually paid during the lifetime of the insured.   *   *   *   Where an insurance company delivers a policy which on its face acknowledge receipt of the *first premium*, it is said that it is estopped to thereafter assert that the premium was not paid, etc."

**That** the company considered the payment due each quarter to be a premium and not an installment is still further shown by the receipt which it issued to the insured (exhibit No. 2) in which, under the language "amount of *premium*," appear the words "second," showing, that the company regarded the payment due for the second quarter as the *second premium*. Hence, under the company's own construction of its own contract, the payment made when the policy was issued was the *first premium* and the next payment was the *second premium*.

The importance of the premium, notice and receipt is made clear by the case of *Battin* v. *N. W. Mutual Life Insurance Co.*, 143 Fed. Rep. 473 (Court of Appeals for the Third Circuit.) In that case, the court held after setting forth in full the premium notice and receipt, that the premium was a *quarterly premium* and not a *quarterly installment* of an annual premium and, therefore, the insurance covered by such quarterly premium was only for three months and that the plaintiff was not entitled to credit this payment as the quarterly installment of an annual premium, so as to continue the policy in force for a year.

Even if there was any doubt as to the meaning of the con-

tract, that doubt must be resolved in favor of the plaintiff in accordance with the decision of our Supreme Court in *Mumaw* v. *The Western & Southern Life Insurance Company,* 97 O. S. 1. In this case, Judge Johnson said at page 7, with reference to life insurance policies:

"They are usually prepared by the company, and, where they are reasonably subject to conflicting interpretations as to the intention of the parties, must be construed strictly against the company. They must be given such a construction as will effectuate and sustain, rather than defeat, the object of parties in entering into them."

In *New York Life Insurance Co.* v. *Hardison* (Mass.), 85 N. E., 410; it was held that a life insurance policy providing for a grace of *thirty days* did not comply with the statute requiring a grace of one month for the payment of every premium after the first and that "no departure from the exact provisions required in insurance policies by statute should be permitted."

In this case the court has no doubt of the meaning of the contract of insurance. It provided for the payment of a premium quarterly, each year for twenty full years. Each payment was a separate premium. The first premium was paid when the policy was issued. To adopt the language of the statute upon each premium after the first, "the insured was entitled to one month of grace *during which month, the insurance continued in force.*"

This conclusion is strengthened by the only decision of a court of final jurisdiction that has been brought to our attention, namely: *Nome* v. *Equitable Life Insurance Company of Iowa,* 35 S. D. 593; 153 N. W. 652. That case is directly in point, the only difference being that the premiums in that case were payable semi-annually. In that case the company attempted to evade the statute by inserting the word "year" after the word "premium." Concerning this, the court said:

"In construing this policy we must substitute the words of the statute in regard to the allowance of grace for the words contained in the policy, because provisions of the statute are as much a part of the policy as though actually incorporated

therein, and the exact language of the policy must give way to the language of the statute. It is our opinion that the words of the statute 'a grace of one month   *   *   *    shall be granted for the payment of every premium after the first' contemplate the allowance of grace after the payment of the first premium, whether such premium be an annual, a semi-annual, or a quarterly premium. By the terms of this policy the payment of $28.22 (the first semi-annual premium) was, together with the application, the consideration for the policy. The consideration paid for a policy of insurance is called the premium. 6 Words and Phrases, 5514. In Cooley's Brief on Ins., p. 462, we find the following:

"'As a general proposition, the payment of an advance premium is necessary to the consummation of an insurance policy unless some other provision is made therefor.'

"It would seem, therefore, that the evident purpose of deferring the grace allowance until after the payment of a premium has been made is to provide that the policy shall have gone into effect before grace shall be allowed."

Our attention has been called to an unreported case of *Kendall* v. *Western & Southern Life Insurance Company,* said to have been determined by the Court of Appeals for the Fourth Judicial District, in which a contrary conclusion was reached. This case is not reported; the record is not supplied nor is the application for the policy quoted. In the typewritten copy of the opinion, furnished us by the Insurance Company, the court says without quoting authority or reasoning, to support the statement that:

"Premium can *only* mean a *yearly* premium not one paid in installments as has been shown by ample authority."

This statement is not good law and since the appellate opinion does not appear to have been affirmed and no authorities are quoted or reasoning advanced in support of the conclusion reached, the same can not be followed as against the reported and well reasoned case of the Supreme Court of South Dakota, cited above.

To hold that the quarterly payments are only installments of an annual premium and are not quarterly premiums, would lead to the absurd conclusion that *even after* the first year, the

insured would only be entitled to grace on the payment of the premium for the *fourth* quarter. In other words, if premium is construed to mean annual premium, then the insured is only entitled to a grace of one month after the end of the *annual* premium period, namely; after the fourth quarter. Thus construed, the policy would be forfeited upon the failure of the insured to pay any of the first three quarterly payments in any year after the first year on the exact date when such quarterly payments become due, but would be entitled to a grace of one month on the payment of the premium for the *fourth quarter only.*

This is clearly not the intention of the statute and the defendant insurance company admitted upon the hearing of the case that this was not the practice of the company and that the companies uniformly construed the law as requiring a period of grace upon each quarterly payment after the first year regardless of whether such payment was called an installment or premium.

In the opinion of the court this practical rule of construction adopted by the insurance companies must also be applied to all quarterly payments after the payment of the first quarterly premium because the statute of Ohio provides for such grace and does not authorize the postponement of the granting of grace until after the first *year*, nor does the statute limit grace to *annual* premiums.

The conclusion reached by the court makes it unnecessary to consider the remaining claim of the plaintiff that by requiring proofs of death after knowledge of the non-payment of the third quarter's premium, the defendant waived this ground of forfeiture which claim finds some support in the evidence and in the decision of *Adams* v. *Columbian Life Insurance Co.,* 218 Ill. App. Ct., p. 54; and *Traders Mutual Life Insurance Co.* v. *Johnson,* 200 Ill., 359.

Judgment may therefore be entered finding the issues in favor of the plaintiff and for the amount due under the policy with a proper deduction for the overdue quarterly premium as provided in the statute.